**In the Matter of W.A.F., Appellant.**

**No. 88–986.**

District of Columbia Court of Appeals.

Argued Feb. 14, 1990.
Decided April 30, 1990.

Arthur J. Whalen, appointed by this court, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Herbert O. Reid, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellant, W.A.F., a mildly retarded youth, appeals from an adjudication of delinquency on the ground that his due process rights were violated when the trial

judge refused to apply the adult standard for determining his competency to stand trial, as set forth in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Appellant further contends that, because he is not competent to stand trial under this standard and not subject to alternative civil commitment proceedings, he must be released under *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). *See Thomas v. United States*, 418 A.2d 122 (D.C.1980). We agree that the trial judge erred in failing to apply the *Dusky* standard and accordingly reverse the judgment and remand the case for further proceedings.

## I

Appellant was arrested three times in short succession and charged as a juvenile delinquent with distribution and possession with intent to distribute a controlled substance (phencyclidine on marijuana and cocaine).[1] D.C.Code § 33–541(a) (1987 Supp.). His counsel filed a motion seeking a determination of appellant's incompetency under *Dusky, supra,* and his release under *Jackson v. Indiana, supra,* 406 U.S. at 738, 92 S.Ct. at 1858. Following an evidentiary hearing,[2] the trial judge found that appel-

lant was competent to stand trial because he was not incompetent within the meaning of D.C.Code § 16–2315(c)(1) (1989), and the juvenile statutory scheme did not contemplate any other competency exception to delinquency proceedings. Based on stipulated facts, the judge found that appellant was a delinquent and committed him to the care and supervision of the District of Columbia Department of Human Services, with placement in a group home and continued attendance at a private special education school in Virginia.

## II

Under *Dusky*, the accused must have "... sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and have] a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402, 80 S.Ct. at 788.[3] The trial judge rejected appellant's claim that this standard applied in juvenile delinquency proceedings, ruling instead that D.C.Code § 16–2315(c)(1)[4] defined the standard for incompetency in delinquency proceedings. Thus, under § 16–2315(c)(1), in the trial judge's view, juvenile delinquency proceedings may be suspended due to incompeten-

---

1. This appeal involves only one of three cases, the other two having been dismissed at the time of disposition.

2. The evidence consisted of testimony and four reports of psychiatrists and psychologists which indicated that appellant functioned in the mentally *retarded range of intelligence*. Two psychiatrists concluded that appellant did not understand the charges against him and could not adequately cooperate and assist his attorney in his defense. Another psychiatrist testified about appellant's limited short-term memory and recall abilities and that appellant was significantly more limited in various kinds of abilities relating to intelligence as well as competency than the average child of his age. Appellant's mother and school principal gave similar testimony about appellant's limited mental ability. However, one psychologist testified that appellant's understanding of the court system was not unlike that of a juvenile who was competent to participate in juvenile delinquency proceedings.

   The trial judge also questioned appellant, who responded in a sometimes confusing and contradictory manner. Appellant stated that he did not understand the entire court system or its

function—he could not say what happens at a trial—but that it is the judge's job to send him home or keep him at the shelter house. He did not know what a prosecutor is, but he knew that it is his lawyer's job to help him. He could not say what his lawyer had told him about the case, but knew that you get into trouble if you tell lies.

3. *See* D.C.Code § 24–301(a) (1989 Repl.) (*Dusky* standard).

4. D.C.Code § 16–2315(c)(1) (1989 Repl.) provides:

   If as a result of mental examination the Division determines that a child alleged to be delinquent is incompetent to participate in proceedings under the petition by reason of mental illness or at least moderate mental retardation as defined in section 6–1902(b), it shall ... suspend further proceedings and the Corporation Counsel shall initiate commitment proceedings pursuant to chapter 5 or 11 of title 21.

   There is no evidence that appellant is mentally ill.

cy *only* if the respondent is incapable of participating in his defense "by reason of mental illness or at least moderate mental retardation." The judge's conception of § 16–2315(c)(1)'s role in the juvenile delinquency statutory scheme was based on his view that the standard for juvenile incompetency was intended to be identical to the standard for commitment of mentally retarded juveniles. D.C.Code §§ 21–1114 and 6–1926 (1989 Repl.). This symmetry was attractive to the judge because a juvenile offender would receive treatment either as a result of a juvenile delinquency disposition or through a facility for the mentally retarded,[5] and, thus there would be no possibility of a child being found incompetent to stand trial, but not subject to civil commitment and therefore released. The trial judge, citing *In re C.W.M.*, 407 A.2d 617, 621 (D.C.1979), viewed this interpretation to be most consistent with the principles underlying the juvenile court system which, unlike the focus in adult criminal proceedings on the imposition of punishment, are designed to provide treatment and rehabilitation for juvenile offenders.

Notwithstanding the laudable efforts of the trial judge to assure that appellant would not fall through the cracks of the statutory scheme, we conclude that the denial of appellant's motion for a *Dusky* incompetency determination founders on the failure to appreciate the constitutional limits of the statutory scheme.

In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial is a deprivation of due process. *See also Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). This court acknowledged in *In re C.W.M.*, *supra*, that, as a matter of course, a person subject to a juvenile delinquency proceeding has the

constitutional right to due process, which includes numerous procedural safeguards accorded adult offenders.[6] Noting, however, that the Supreme Court has repeatedly declined to hold that a juvenile delinquency proceeding must conform to all the requirements of an adult criminal trial, the court recognized that the question remains whether "fundamental fairness" requires that certain requirements of adult criminal proceedings apply to juvenile delinquency proceedings. 407 A.2d at 621 (citing *McKeiver v. Pennsylvania, supra* note 6, 403 U.S. at 543, 91 S.Ct. at 1985). In *C.W.M.*, the court concluded that the insanity defense, prohibited in juvenile delinquency proceedings under D.C.Code § 16–2315(d), did not serve a function essential to fundamental fairness that could not otherwise be performed adequately in the juvenile system and, hence, proceedings pursuant to D.C.Code § 16–2315(d) were fundamentally fair. *Id.* at 621–25. Since the right not to be tried while incompetent is a due process right, *see Pate* and *Drope, supra,* the *Dusky* type competency standard would be applicable to juvenile delinquency proceedings unless the juvenile system adequately protects that right. We conclude that the incompetency standard in section 16–2315(c)(1), together with other procedures in the juvenile system, does not do so.

In an adult criminal prosecution, the purpose of an inquiry into an accused's competency is twofold: first, to assure that the accused understands the nature of the proceedings against him and is able to consult with his lawyer in order to prepare a defense, recognizing that a proper defense is essential to the accuracy of the guilt determination process, *Drope v. Missouri, supra,* 420 U.S. at 171–72, 95 S.Ct. at 903–04; *Evans v. United States*, 83 A.2d 876, 879 (D.C.Mun.App.1951), and, second, "to prevent the infliction of punishment upon a person so lacking in mental capacity as to

---

**5.** In 1980, the Council of the District of Columbia amended D.C.Code § 16–2315(c) to conform to the District of Columbia Mental Retardation Rights Act. COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON HUMAN SERVICES, REPORT ON BILL 3–220, at 5–6 (1980).

**6.** 407 A.2d at 620 (citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 533, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647 (1971); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).

be unable to understand the nature and purpose of the punishment," *Neely v. United States,* 80 U.S.App.D.C. 187, 189, 150 F.2d 977, 979, *cert. denied,* 326 U.S. 768, 66 S.Ct. 166, 90 L.Ed. 463 (1945). A finding of incompetency results in the commitment of a defendant for care and treatment, and for observation and examination, in order to evaluate the possibility of a defendant regaining his competency. D.C.Code § 24–301(a), *supra* note 3. If the defendant regains competency, the prosecution can be resumed, *id.* § 24–301(b), but if it appears that the accused will not become competent in the reasonably foreseeable future, the criminal proceedings must be dismissed and civil commitment proceedings may be commenced pursuant to D.C. Code § 21–541 (1989). *Id.* § 24–301; *Thomas, supra,* 418 A.2d at 125–26. Since the standard of incompetency to stand trial does not mirror the standard for civil commitment, a criminal defendant could be found incompetent to stand trial and also not be subject to civil commitment, and, therefore, would be entitled to be released. *Jackson v. Indiana, supra,* 406 U.S. at 738, 92 S.Ct. at 1858; *Thomas, supra,* 418 A.2d at 125–26.

The first function served by the adult competency requirement and the *Dusky* standard is to assure that the person charged with violating the law is able to prepare a defense, in order to increase the accuracy of the factual and guilt determinations.[7] No less a need exists for a youth in juvenile delinquency proceedings. The condition precedent for the court's ordering of a rehabilitative disposition in a juvenile delinquency proceeding is a factual determination that the juvenile has violated a provision of the criminal law. D.C.Code § 16–2305(d) (1989 Repl.); *In re W.B.W.,* 397 A.2d 143, 147 (D.C.1979). Even if all parties to a juvenile delinquency proceeding share the goal of finding a disposition in the child's best interests, and the proceedings may be less adversarial than adult prosecution,[8] such proceedings clearly present an opportunity for factual disputes. Differing views of what is in the child's best interests may arise from these disputes as to the underlying facts. In addition, a disposition may well not be in the best interests of a child if it rests on an erroneous or unreliable factfinding determination. While counsel as well as a guardian ad litem are available to juvenile delinquents, D.C.Code §§ 16–2304, 21–2033 (1989 Repl.), as they were to appellant, both are limited in their ability to prepare a defense by the juvenile's knowledge, understanding, and ability to reconstruct and communicate the facts. For this reason, the legislature has given the juvenile an unqualified right to be present at "a factfinding hearing" in delinquency proceedings. D.C.Code § 16–2316(f) (1989 Repl.). Consequently, we find no inconsistency between the goals of the juvenile justice system, as reflected in our statutory scheme, and the basic principle that the accuracy of the factfinding determination—and the accused's own minimal contribution thereto—is part of the fundamental fairness inherent in due process.

Accordingly, we hold that the determination of mental competency of a juvenile is one of those instances where the procedure followed in adult criminal prosecutions must be applied to juvenile delinquency proceedings. The right not to be tried or convicted while incompetent is a fundamental right of a juvenile in juvenile delinquency proceedings, *see, e.g., State ex rel. Dandoy v. Superior Court In and For Pima County,* 127 Ariz. 184, 619 P.2d 12 (1980) (en banc); *In re Welfare of S.W.T.,* 277 N.W.2d 507 (Minn.1979); *State in Interest of Causey,* 363 So.2d 472 (La.1978); *In the Interest of T.D.W.,* 109 Ill.App.3d 852, 65

---

**7.** The second function is, arguably, less relevant in juvenile delinquency proceedings, in view of treatment and rehabilitative goals of the juvenile justice system. Still, the effectiveness of a rehabilitative disposition requires an ability to understand the nature and purpose of the disposition and may therefore be required by the fundamental fairness inherent in due process. We need not reach this question, however, since we conclude that the first function served by the competency requirement cannot be fulfilled by procedures other than a *Dusky* type standard in juvenile delinquency proceedings.

**8.** *See, e.g.,* D.C.Code § 16–2316(a) (1989 Repl.) (no right to a jury trial).

Ill.Dec. 363, 441 N.E.2d 155 (1982), and we read our statute accordingly.[9]

Appellant further contends that the record demonstrates that he is incompetent under the *Dusky* standard, there being no evidence to the contrary, *see* note 2, *supra*. Therefore, he argues because the government is foreclosed by his established and unchanging status as mildly retarded from civilly committing him under section 16–2315(c), *see* note 4 *supra*, he is entitled to release. *Jackson v. Indiana, supra*, 406 U.S. at 738, 92 S.Ct. at 1858. Although we recognize that some courts have held on appeal that a juvenile appellant is incompetent to stand trial, *see, e.g., Matter of Welfare of S.W.T., supra*, 277 N.W.2d at 512, we do not find occasion to do so here, and we remand the case to the trial judge, who, now applying the correct standard, can determine appellant's competency to stand trial and the nature of any other relief to which he may be entitled.

Accordingly, the judgment is reversed and the case remanded for proceedings not inconsistent with this opinion.

*So ordered.*

FARRELL, Associate Judge, concurring:

Although the issue is not free from doubt, I agree with the court that the standard of competency set forth in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), applies in juvenile delinquency proceedings. The issue is not without doubt because the Supreme Court has implied that the effect upon liberty of conviction as an adult may be different from the effect of a delinquency adjudication,

inasmuch as "juveniles, unlike adults, are always in some form of custody...." *Schall v. Martin*, 467 U.S. 253, 265, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984). Nevertheless, our decisions have emphasized that it is a "criminal statute [that gives] rise to the [delinquency] proceeding and that a determination of guilt or innocence ends its fact-finding aspects." *District of Columbia v. M.A.C.*, 328 A.2d 375, 376 (D.C.1974); *see also In re B.L.B.*, 432 A.2d 722, 723–24 (D.C.1981). Thus, it would take stronger indications than I can find by the Supreme Court to persuade me that *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), does not require the juvenile to be able to understand the proceedings against him and minimally assist in his own defense.[1] Indeed, I am not convinced that a constitutional ruling is necessary on this point. By statute, D.C. Code § 16–2316(f) (1989), an accused in a delinquency proceeding has an unqualified right to be present at a factfinding hearing. To hold *Dusky's* standard of competency inapplicable would be to say that the legislature meant this right to be strictly formal or symbolic, an implausible idea.

I understand Judge Wertheim's concern that juveniles alleged to be delinquent not fall between the cracks—be incompetent to stand trial yet not committable, though possibly dangerous. The concern may be somewhat overstated, however. There are alternative procedures, *viz.*, CINS (children in need of supervision) and neglect proceedings, which can lead to custodial treatment of juveniles who have committed antisocial and criminal acts. The court's opinion rightly does not suggest whether *Dusky*

---

**9.** The government's reliance on *Wilson v. United States*, 129 U.S.App.D.C. 107, 391 F.2d 460 (1968), is misplaced since the approach to competency adopted by the *Wilson* court is not contrary to the approach we adopt in the instant case. *Wilson* involved a criminal defendant who developed amnesia from a head injury which caused him to forget events from the afternoon of the robberies in question. The court rejected a *per se* approach to the question of incompetency by reason of amnesia and adopted a case-by-case approach depending on whether a specific defendant's amnesia did, in fact, in a retrospective review by the court, deprive him of a fair trial and of the effective

assistance of counsel. A retrospective review in delinquency proceedings could not cure deficiencies arising from the juvenile's inability to understand and assist in the proceedings.

**1.** *Dusky* requires that the accused have "a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402, 80 S.Ct. at 788. It stands to reason, of course, that even a normal juvenile often will not have the same "rational" understanding of the proceedings as an adult would, nor be able to consult with his lawyer with the same understanding.

would apply to either of those proceedings; as to them the analysis might be very different. *See In re B.L.B., supra*, 432 A.2d at 724 ("as a general matter CINS petitions ... have not been deemed criminal by this court"). Indeed, I am disturbed by the apparent acquiescence of everyone below in the view that if W.A.F. cannot be dealt with as a delinquent, he cannot be treated (in custody) at all. If the allegations of the petition are true, W.A.F. appears to have been—at the time of filing—a neglected child "without proper parental care or *control*," D.C.Code § 16–2301(9)(B) (emphasis added), though through no fault of his mother: his mental retardation made him the more or less unwitting instrument of drug dealers.[2]

Since I agree with the court that, whether as a statutory or constitutional matter, the *Dusky* test applies to delinquency proceedings, I join its opinion and the result.

**2.** Though this was the government's theory, it informed the trial court only—to quote its brief—that "a preliminary investigation conducted by the Department of Human Services showed that W. was not a neglected child."