*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CO-0233

RALSTON PEYTON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CMD-007290)

(Hon. Peter A. Krauthamer, Trial Judge)

(Argued June 21, 2023                                    Decided August 10, 2023)

*Daniel Gonen*, Public Defender Service, with whom *Samia Fam*, *Jaclyn S. Frankfurt*, and *Kelsey Townsend*, Public Defender Service, were on the filings, for appellant.

*Michael E. McGovern*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *Saifuddin Kalolwala*, and *Jennifer C. Mika*, Assistant United States Attorneys, were on the filings, for appellee.

*Holly M. Johnson*, Senior Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, and *Ashwin P. Phatak*, Principal Deputy Solicitor General, were on the brief, for the District of Columbia as amicus curiae supporting appellee.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

Opinion of the court per curiam.

Opinion by *Associate Judge* MCLEESE, dissenting in part and concurring in the judgment, at page 12.

PER CURIAM: Appellant Ralston Peyton was charged with the misdemeanor offense of unlawful entry onto private property, but he was subsequently found to be incompetent to proceed in the criminal case and unlikely to regain competence. *See* D.C. Code § 24-531.01(1) (defining "competence" as "present ability to consult with [defendant's] lawyer with a reasonable degree of rational understanding" and "rational, as well as . . . factual, understanding of the proceedings").

The criminal court ordered Mr. Peyton to remain in inpatient treatment for up to 30 days pending the filing of a civil-commitment petition. *See* D.C. Code § 24-531.06(c)(4). After the District of Columbia filed a civil-commitment petition, the criminal court further ordered that Mr. Peyton remain in the inpatient mental-health facility until the entry of a final order in the civil-commitment case. *See* D.C. Code § 24-531.07(a)(2) ("If a petition for civil commitment has been filed, the court may either order that treatment be continued until the entry of a final order in the civil commitment case or release the defendant from treatment.").

Mr. Peyton appealed and filed an emergency motion for summary reversal. The United States filed a cross-motion for summary affirmance, supported by the

District of Columbia as amicus curiae. After the emergency filings were completed, the court set the case for oral argument as soon as was practical.

Relying on principles of substantive due process, procedural due process, and equal protection, Mr. Peyton argues that § 24-531.07(a)(2) is both facially unconstitutional and unconstitutional as applied to him. The United States and the District of Columbia argue that § 24-531.07(a)(2) is not facially unconstitutional and the United States argues that § 24-531.07(a)(2) was not unconstitutionally applied to Mr. Peyton.

During the pendency of this emergency appeal, the family court issued a final order in Mr. Peyton's civil-commitment matter. In that order, to which the parties consented, the family court determined by clear and convincing evidence that Mr. Peyton was mentally ill; that he was likely to injure himself or others if not committed; and that outpatient treatment was the least-restrictive treatment alternative. The family court therefore ordered Mr. Peyton committed for a one-year period of outpatient treatment. The issuance of that final commitment order means that the order currently under review, which provided for inpatient treatment only until issuance of a final commitment order, is no longer in effect.

The parties dispute whether the appeal is therefore moot or whether the order instead might have adverse collateral consequences. We need not decide that issue. Even assuming that the case is moot, we would decline to dismiss the case outright. This court was established under Article I of the United States Constitution and therefore is not strictly governed by the mootness principles that govern courts established under Article III of the United States Constitution. *E.g.*, *In re Bright Ideas Co.*, 284 A.3d 1037, 1042 n.4 (D.C. 2022). Rather, we have discretionary authority, which we exercise "careful[ly,] . . . to reach the merits of a seemingly moot controversy." *Atchison v. District of Columbia*, 585 A.2d 150, 153 (D.C. 1991). For example, we have exercised that authority in cases that "present[] an important and recurring issue . . . [that] would otherwise tend to evade review." *In re Macklin*, 286 A.3d 547, 551 (D.C. 2022).

The defendant in *In re Macklin* was found incompetent and unlikely to regain competence. 286 A.3d at 550. Unlike in the present case, the criminal court in *In re Macklin* ultimately released the defendant in the criminal case and did not order the defendant into inpatient treatment pending the outcome of the ongoing civil-commitment proceeding. *Id.* at 550-51. The District of Columbia appealed, arguing that the statutory provisions at issue required that the defendant remain in inpatient treatment pending the outcome of the civil-commitment proceeding. *Id.* at 551.

While the appeal was pending, however, the civil-commitment proceeding was completed and the defendant was committed for a one-year period of outpatient treatment. *Id.* Nonetheless, this court exercised its discretion to decide the case on the merits. *Id.*

For reasons similar to those in *In re Macklin*, we exercise our discretion to consider certain of the issues raised in this emergency appeal rather than dismissing the appeal outright. We note, however, that the parties and the amicus raise numerous constitutional and statutory issues, some of which are complex and unsuited to disposition under the standards the court generally applies when considering whether to decide issues through summary procedures. *See generally, e.g.*, *Carl v. Tirado*, 945 A.2d 1208, 1209 (D.C. 2008) (per curiam) ("The standard for summary disposition is well-established: the movant must show that the basic facts are both uncomplicated and undisputed, and that the lower court's ruling rests on a narrow and clear-cut issue of law."). In theory, the court could devote substantial additional resources to the case, by directing full briefing, holding a second oral argument after that full briefing, and fully resolving all contested issues on the merits. We are mindful, however, that our discretion to decide seemingly moot cases should be exercised carefully. *Atchison*, 585 A.2d at 153. Rather than either dismissing the case outright or fully resolving all of the issues presented by

the parties and the amicus, we take an intermediate approach. In the course of this appeal, the United States has acknowledged that important minimum requirements must be met before a defendant who has been found incompetent and unlikely to regain competence could constitutionally be ordered pursuant to D.C. Code § 24-531.07(a)(2) to remain in inpatient treatment in the criminal case awaiting final resolution of a pending civil-commitment petition. We agree, and we therefore issue this opinion recognizing those minimum requirements.

Most broadly, Mr. Peyton argues that § 24-531.07(a)(2) is facially unconstitutional, because it purports to grant the criminal court standardless discretion to order continued inpatient treatment of defendants who have been found incompetent and unlikely to regain competence, until the final resolution of a pending civil-commitment petition. In our view, Mr. Peyton's facial challenge to § 24-531.07(a)(2) presents a difficult issue not suitable for resolution through summary procedures. *Compare, e.g.*, *Conley v. United States*, 79 A.3d 270, 277 (D.C. 2013) (to demonstrate statute is facially invalid, "[a]ppellant must demonstrate that the terms of the statute, measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain a constitutional infirmity that invalidates the statute in its entirety" (cleaned up)), *with, e.g.*, *Sharps v. United States*, 246 A.3d 1141, 1154 (D.C. 2021) (stating that

defendant asserting facial unconstitutionality of statute "can only succeed by establishing that no set of circumstances exist under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications" (cleaned up)). We recognize the desirability of providing guidance to the trial court on the question whether § 24-531.07(a)(2) is facially unconstitutional, but for the reasons we have explained we do not on balance view it as appropriate to resolve that issue in the circumstances of the present case.

More narrowly, Mr. Peyton argues that a defendant who has been found incompetent and unlikely to regain competence could lawfully be ordered by the criminal court to remain in inpatient treatment while awaiting final resolution of a pending civil-commitment petition only if certain procedural and substantive requirements were met. The United States and the District of Columbia take differing positions on some of the issues raised by Mr. Peyton's narrower argument, and the positions of both the United States and the District of Columbia also appear to have evolved to a degree during this appeal. As noted above, however, we understand the United States—the prosecuting entity in this case—to have acknowledged at oral argument that, to constitutionally order inpatient treatment under § 24-531.07(a)(2), the criminal court must comply with certain procedural and substantive requirements. Specifically, we understand the United States to have

acknowledged that a defendant who has been found incompetent and unlikely to regain competence may not constitutionally be ordered to remain in inpatient treatment in the criminal case, pursuant to § 24-531.07(a)(2), in the absence of (1) a finding that the defendant has a mental illness; (2) a finding that, because of that mental illness, the defendant would be a danger to self or others if not immediately detained; (3) a finding that inpatient treatment is the least restrictive means of addressing dangerousness; and (4) the right to an evidentiary hearing unless the defendant concedes those issues. We also understand the District, as amicus, to agree that these findings and a hearing (if requested) are required, though the United States is more pointed in acknowledging that the Constitution—rather than a silent statute—requires these measures.[1] We agree with the United States that a criminal court's constitutional exercise of authority to order inpatient treatment under § 24-531.07(a)(2) would at a minimum require compliance with those procedural and substantive requirements.

---

[1] Because the text of D.C. Code § 24-531.07(a)(2)—"If a petition for civil commitment has been filed, the court may either order that treatment be continued until the entry of a final order in the civil commitment case or release the defendant from treatment"—is silent on these questions, we do not see a way in which these requirements could be imposed without reference to constitutional principles. *But see post* at 14. And we do not understand the District to be advocating otherwise. Instead it took the position at oral argument that we could "read[] [the statute] so it would be constitutionally valid. Whether you want to call it fixing the statute, changing the statue, or just interpreting it in a way that's valid, that is what we know the court is required to do."

Specifically, we are confident that the Fifth Amendment's substantive and procedural protections[2] in combination support requiring the criminal court to make the findings described above regarding mental illness, dangerousness, and least restrictive alternative. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (observing that "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed"); *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975) (holding that, to comport with due process, a court must make dangerousness and least-restrictive-alternative findings in a civil-commitment proceeding because "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends"); *Foucha v. Louisiana*, 504 U.S. 71, 78-80, 83 (1992) (holding that, to comport with due process, a current mental illness and dangerousness finding was required for continued detention of individuals acquitted by reason of insanity); *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979) (observing that "[d]iscretion without a criteria for its exercise is authorization of arbitrariness" (internal quotation marks omitted)); *see also Baxstrom v. Herold*, 383 U.S. 107, 114 (1966) (rejecting as unconstitutional the "wholly arbitrary" statutory

---

[2] The principles embodied in the Fourteenth Amendment likewise define the protections that apply to the District under the Fifth Amendment. *See Dean v. United States*, 938 A.2d 751, 759 n.10 (D.C. 2007).

provision of lesser procedures to one group of individuals civilly committed); *cf. Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (reaffirming that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects" and that outside of a criminal case, detention violates that Clause absent "certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint" (cleaned up)).  We likewise have no doubt that the Fifth Amendment guarantee of "the opportunity to be heard at a meaningful time and in a meaningful manner" necessitates an evidentiary hearing unless all of these substantive criteria are conceded.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted); *see also Vitek v. Jones*, 445 U.S. 480, 488 (1980) (requiring "opportunity for notice and an adequate hearing" regarding prisoner transfer to a mental hospital to comport with due process); *cf. Zadvydas*, 533 U.S. at 691 (noting that the Court has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections").  We therefore hold that the Constitution requires these substantive and procedural protections.

As previously noted, we express no view on Mr. Peyton's claim that § 24-531.07(a)(2) is facially unconstitutional. We also express no views as to a number of other issues that arose during briefing and argument in this case. Many of those issues have not been fully briefed and many in any event do not appear to be suitable for summary decision. For example, we express no views as to (1) whether the required findings should be made under a probable-cause standard or a higher standard; (2) what level of scrutiny applies under substantive-due-process principles to determine the constitutionality of the temporary detention of defendants who have been found incompetent and unlikely to regain competence; (3) the constitutionality of D.C. Code § 24-531.06(c)(4), which authorizes a criminal court to order up to 30 days of inpatient treatment for defendants who have been found incompetent and unlikely to regain competence, during which time a civil-commitment petition may be filed; (4) the constitutionality of the procedure, discussed in *In re Macklin*, wherein a defendant who has been found incompetent and unlikely to regain competence is "released from treatment" in the criminal case and then remanded to the inpatient treatment facility, D.C. Code § 24-531.07(a)(2), (c)(1); *In re Macklin*, 286 A.3d at 553-60; and (5) the proper procedure to be followed if the criminal court declines to order inpatient treatment under D.C. Code § 24-531.07(a)(2) because the criminal court finds that the defendant has not been

shown to be dangerous, and the criminal court then releases the defendant from treatment.

Finally, we vacate the criminal court's order that Mr. Peyton remain in an inpatient mental-health facility until the entry of a final order in the civil-commitment case. On the assumption that the appeal is moot, vacating the trial court's order serves to "protect [Mr. Peyton] from the collateral effects" of the criminal court's order. *Bryan v. United States*, 836 A.2d 581, 583 (D.C. 2003). On the assumption that the appeal is not moot, we think it clear that the proceedings in the criminal court in this case did not fully comply with the procedural and substantive requirements that the United States and the District of Columbia now acknowledge. The order of the Superior Court is therefore vacated.

*So ordered.*

MCLEESE, J., *Associate Judge*, dissenting in part and concurring in the judgment: In my view, this appeal is moot. The order at issue directed that Mr. Peyton remain in an inpatient mental-health facility until the entry of a final order in the civil-commitment case. A final order has now been entered in the civil-commitment case, so the prior order is no longer operative. Mr. Peyton argues that

the prior order might have collateral consequences, but I am not persuaded that is the case. To avoid the possibility of such consequences, however, I agree that the order of the trial court should be vacated. *See, e.g.*, *Lewis v. Hotel & Rest. Emps. Union, Local* 25, 727 A.2d 297, 299-300 (D.C. 1999) (when case becomes moot on appeal, trial-court judgment should ordinarily be vacated, "thereby preserving the rights of all parties"). I therefore concur in the judgment.

I respectfully disagree with the court's decision to resolve this case on the merits. Mr. Peyton's broadest argument is that § 24-531.07(a)(2) is facially unconstitutional. The court appropriately declines to decide that issue, for three stated reasons: (1) the issue has been briefed and argued in this case through expedited and summary procedures; (2) the issue is difficult and not suitable to resolution through summary procedures; and (3) we should carefully exercise our discretion to decide seemingly moot cases. *Supra* at 5-6. Declining to reach Mr. Peyton's claim of facial unconstitutionality is appropriate for a fourth reason that is of fundamental importance but that the court does not mention: the principle that we should avoid unnecessarily deciding constitutional issues. *See generally, e.g.*, *In re Bright Ideas Co.*, 284 A.3d 1037, 1049 (D.C. 2022) ("[C]onstitutional adjudication is a matter of great gravity and delicacy, so our practice is to avoid ruling on constitutional questions unless we have no other choice.") (internal quotation marks

omitted); *Olevsky v. District of Columbia*, 548 A.2d 78, 81 (D.C. 1988) ("The practice of avoiding constitutional issues if it is reasonably possible to do so is predicated on a fundamental rule of judicial restraint, which is perhaps more deeply rooted than any other doctrine of constitutional adjudication.").

Mr. Peyton argues more narrowly that a defendant who has been found incompetent and unlikely to regain competence may not constitutionally be ordered to remain in inpatient treatment in the criminal case, pursuant to D.C. Code § 24-531.07(a)(2), unless certain procedural requirements are met. The United States and the District of Columbia concede that the procedural protections noted above are legally required, but they disagree as to whether those protections are compelled by the Constitution or instead should be imposed as a matter of statutory interpretation. In my view, the court in this case need not and should not decide those issues on the merits. Resolving those issues will have no effect on Mr. Peyton. Moreover, given the concessions of the United States and the District of Columbia, it does not appear that resolving those issues in this case is necessary to protect the interests of defendants who are found to be incompetent and unlikely to regain competence. Finally, resolving those issues in this case is unwarranted for the same four reasons that it is appropriate to decline to decide whether § 24-531.07(a)(2) is facially unconstitutional: (1) the relevant constitutional and statutory issues have

been briefed and argued in this case through expedited and summary procedures; (2) the issues are difficult and not suitable to resolution through summary procedures; (3) we should carefully exercise our discretion to decide seemingly moot cases; and (4) we should avoid unnecessarily deciding constitutional issues.

The court's choice to announce a constitutional ruling in this case is of particular concern, in my view, for two additional reasons. First, the court's constitutional ruling appears to raise a significant question about the constitutionality of a federal statute. *See* 18 U.S.C. § 4246(a) (filing of civil-commitment certificate with respect to defendant found incompetent and unlikely to regain competence "stay[s] the release of the person pending completion" of civil-commitment proceedings). Second, although the court announces a constitutional holding, it does not provide any substantial independent analysis to support that holding. Rather, the court's analysis consists of (1) a brief footnote suggesting, without citation to authority, that § 24-531.07(a)(2) cannot properly be construed to provide the procedural protections at issue, *supra* at 8 n.1; and (2) a string cite of cases that address various substantive-due-process and procedural-due-process issues but that do not clearly resolve the constitutional issue the court chooses to resolve, *supra* at 9-10. The court does not address the contrary authority and arguments presented by the District of Columbia. *See, e.g., Jackson v. United States*, 406 U.S. 715, 725

(1972) (temporary, rather than indefinite, detention of defendant found incompetent and unlikely to regain competence "might well be a different case"); *Thomas v. United States*, 418 A.2d 122, 126 (D.C. 1980) ("The Supreme Court in *Jackson* did not require additional temporary measures to justify continued confinement pending disposition of the civil commitment procedures . . . and we, too, see no need for such additional measures here."). In my view, the court's brief discussion does not support a conclusion that the constitutional issue the court unnecessarily decides is so clear as to be appropriate for summary resolution in this moot appeal. *See generally, e.g.*, *D.C. Metro. Police Dep't v. Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm.*, 997 A.2d 65, 70 (D.C. 2010) ("[S]ummary treatment is reserved for cases where the trial court's ruling rests on a narrow and clear-cut issue of law.") (internal quotation marks omitted).

For the foregoing reasons, I respectfully dissent in part and concur only in the judgment.