619 P.2d 12

STATE of Arizona ex rel. Suzanne DAN-DOY, as Director, Department of Health Services, and State of Arizona ex rel. R. Robertson Kenner, as Superintendent, Arizona State Hospital, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and Lillian S. Fisher, a Judge thereof, Respondents,

and

Anonymous, a minor, Respondent and Real Party in Interest.

No. 14743–PR.

Supreme Court of Arizona, In Banc.

June 4, 1980.

Robert K. Corbin, Atty. Gen. by Paul A. Katz, Sp. Asst. Atty. Gen., Charles S. Pierson, Asst. Atty. Gen., Phoenix, for petitioners.

Stephen D. Neely, Pima County Atty. by Howard L. Baldwin, Deputy County Atty., Tucson, for respondents.

Richard S. Oseran, Pima County Public Defender by Thomas Althaus, Asst. Public Defender, Tucson, for respondent Minor.

HOLOHAN, Vice Chief Justice.

Petitioners brought a special action in the Court of Appeals, Division Two, challenging the authority of the Respondent Juvenile Court Judge to order the continued involuntary hospitalization of the respondent minor (real party in interest). The Court of Appeals determined that the juvenile court had exceeded its jurisdiction and ordered that the juvenile be discharged from the hospital and released to the custody of either the Pima County Sheriff or a Pima County probation officer. The respondent judge petitioned this court to review the decision of the Court of Appeals. *State ex rel. Dandoy v. Superior Court of the State of Arizona in and for the County of Pima*, Ariz., 619 P.2d 17 (App.1979). We granted review. Opinion of the Court of Appeals is vacated.

The respondent juvenile is the subject of three petitions filed in the juvenile court, alleging that she has committed delinquent acts.

After the filing of the petitions, the juvenile was referred to two psychiatric facilities for testing and evaluation, but she escaped from both units. When the juvenile was apprehended after her second escape, she was taken back to the second facility for emergency treatment and completion of her evaluation. After the evaluation was completed she was held in custody at the Pima County Juvenile Court Detention Center.

As a result of the juvenile's actions, the juvenile's court–appointed attorney filed a motion for a "Court ordered psychiatric examination as mandated by A.R.S. 8–242A."

A hearing on the juvenile's mental health was held on October 30, 1979. Testimony and evidence were taken, after which the respondent judge order the juvenile "committed to the Arizona State Hospital for evaluation and treatment" for "no less than thirty days." The court made four findings:

"(1) THAT the minor at present is a danger to herself and others;

"(2) THAT the minor is unable to assist in her defense;

"(3) THAT the minor is unable to fully comprehend all of the legal proceedings in the Court at this time;

"(4) THAT the minor needs additional evaluation and treatment."

It was further ordered that the hospital advise the court, the juvenile's attorney and her mother when she was ready for release or discharge. A review hearing was set for November 27, 1979.

The state hospital's "Discharge Summary," dated November 24, 1979, reported the hospital staff's conclusion that the juvenile's problems were consistent with a character disorder, that she could assist in her own defense and that she was capable of understanding the legal proceedings. The hospital staff recommended that she be discharged to the court immediately following her court hearing on November 27, 1979.

At the review hearing on November 27, 1979, the juvenile's attorney advised the court that he did not feel the juvenile was able to assist in her defense. The court found that "the minor is still dangerous to herself or others, based on the reports submitted to the Court and filed in the social file." The court ordered that the juvenile remain at the state hospital for continued treatment and that a review of the matter be held on December 20, 1979.

On December 3, 1979, the state hospital advised the respondent judge by letter that the juvenile was not mentally ill and was not in need of inpatient psychiatric care. The representatives of the hospital felt that they could not clinically or legally justify the continued hospitalization of the juvenile, and the child was to be discharged on December 7, 1979. The respondent judge replied on December 5, 1979, that the juvenile appeared to be a danger to herself, requiring institutional care and ordered that she remain in the custody of the state hospital.

The Attorney General upon behalf of the petitioners challenges both the authority of the respondent judge to commit the juvenile to the state hospital in the manner done in this case and to continue her involuntary hospitalization.

The petitioners question the authority of the juvenile court to commit a juvenile to the state hospital under A.R.S. § 8–242 before the juvenile has been adjudicated delinquent, dependent, or incorrigible. It is conceded that the juvenile has never been adjudicated delinquent, dependent, or incorrigible.

■ From our reading of the statute it appears clear that the section in question applies only to the disposition of juveniles who have been adjudicated by the juvenile court to be delinquent, dependent, or incorrigible. *See In re Maricopa County Appeal*, 15 Ariz.App. 536, 489 P.2d 1238 (1971). A.R.S. § 8–242 did not authorize the action taken by the juvenile court.

It is contended that the juvenile court had authority under the Mental Health Services Act, particularly A.R.S. § 36–520 *et seq.* and A.R.S. § 36–533 *et seq.*, to order the juvenile committed for treatment.

Although the juvenile court made an express finding that the juvenile was a danger to herself, the court did not act in full compliance with the procedures set forth in the Mental Health Services Act. It must also be noted that under the Mental Health Services Act the person committed may be released by the medical director of the treating agency. A.R.S. § 36-543. The term of treatment is a medical decision, not a judicial one. The juvenile court's action in ordering the continued hospitalization of the juvenile was not authorized by the Mental Health Services Act.

Throughout the tortured path of this case there remains the issue of how does the juvenile court determine the mental competency of a juvenile? There is no rule of procedure nor method specified for determining a juvenile's competency prior to adjudication in either the statutes concerning the juvenile court, A.R.S. § 8–201 et seq., or in the Rules of Procedure for the Juvenile Court, 17A A.R.S.

The United States Supreme Court held in *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that a juvenile must be accorded due process protections in the adjudication of charges against him. In an adult criminal prosecution it would be a violation of due process to convict a mentally incompetent accused. *State v. Wagner*, 114 Ariz. 459, 561 P.2d 1231 (1977). As the Supreme Court stated in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975):

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.

. . . . .

"[T]he prohibition is fundamental to an adversary system of justice." 95 S.Ct. at 903, 904.

In the context of a juvenile delinquency adjudicatory proceeding, the right not to be tried or convicted while incompetent has been held to be a fundamental right. *In re*

*Welfare of S.W.T.*, 277 N.W.2d 507 (Minn. 1979).

*Gault* establishes that due process requires that a juvenile have notice of the charges against him and the right to assistance of counsel would be meaningless if the juvenile, through mental illness, was unable to understand the charges or assist in her own defense.

The requirements of due process necessitate the conclusion that the juvenile court must have the power to inquire into a juvenile's mental competency prior to adjudication.

Generally the procedure followed in adult prosecution is not applicable to juvenile proceedings. *In re Appeal in Maricopa County Juvenile Action No. J–86715*, 122 Ariz. 300, 594 P.2d 554 (App.1979); *In re Appeal in Yavapai County, Juvenile Action No. 7707*, 25 Ariz.App. 397, 543 P.2d 1154 (1975). There have been occasions, however, when reference has been made to the adult system and made applicable to the juvenile system. See *In re Anonymous, Juvenile Court No. 6358–4*, 14 Ariz.App. 466, 484 P.2d 235 (1971); *In re Appeal in Maricopa County, Juvenile Action No. J–72804*, 18 Ariz.App. 560, 504 P.2d 501 (1972) and again, in *In re Appeal in Pima County, Juvenile Action No. J–47735–1*, 26 Ariz. App. 46, 546 P.2d 23 (1976). It appears that the determination of mental competency of a juvenile for trial is one of those instances where the procedure followed in adult prosecution must be applied to juvenile cases. The adult procedure is set forth in Rule 11 of the Rules of Criminal Procedure, 17 A.R.S.

It must be noted that the medical authorities at the state hospital conducted an examination and made a report which would comply with the provisions of Rule 11. The medical authorities advised the respondent court that the juvenile was not mentally ill and that she was able to understand the proceedings and assist her counsel. Nothing further could have been achieved by keeping the juvenile in the state hospital. See also Rule 11.3(d) Rules of Criminal Procedure.

The difficulty in this case occurred primarily because there was confusion in differentiating between the procedure to determine mental competency prior to adjudication and the procedure for making a disposition of a mentally ill child after adjudication. The procedure to be followed in the former situation is that provided in Rule 11 of the Criminal Rules, and the procedure to be followed in the latter situation, after adjudication, is that provided in A.R.S. § 8–242.

The relief sought by the petitioners is granted.

STRUCKMEYER, C. J., and HAYS, CAMERON and GORDON, JJ., concur.