# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 49

APRIL TERM, A.D. 2013

April 25, 2013

IN THE INTEREST OF:

SWM

Petitioner,

v.

THE STATE OF WYOMING,

Respondent.

No. S-12-0154

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Petitioner:*
    *Diane M. Lozano, State Public Defender; Aaron Hockman, Assistant Public Defender; Tina N. Olson, Appellate Counsel.  Argument by Mr. Hockman.*

*Representing Respondent:*
    *Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General.  Argument by Mr. Delicath.*

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]   In this interlocutory appeal, Petitioner, SWM, challenges the juvenile court's determination that he was competent to proceed to adjudication in a delinquency proceeding. He contends that the juvenile court violated his constitutionally protected due process rights when it disregarded relevant evidence and failed to apply the proper standard in determining competency. We agree and, accordingly, reverse and remand for further proceedings.

## ISSUE

[¶2]   SWM presents one issue: Do the Constitutions of the United States and the State of Wyoming require that the due process considerations that underlie Wyo. Stat. Ann. § 7-11-303 also apply in determining the competency of a minor under Wyo. Stat. Ann. § 14-6-219?

## FACTS

[¶3]   On December 23, 2011, the State filed a petition in juvenile court alleging that SWM had committed two delinquent acts.[1] SWM was twelve years old at the time of the alleged delinquent acts. During his initial appearance, SWM was informed of "the consequences . . . of being a Delinquency Child," and was advised of his "rights guaranteed by the Constitutions of the United States and the State of Wyoming." SWM was also advised that juvenile court was different than criminal court, but the juvenile court made it clear that SWM faced the possibility of significant sanctions if adjudicated delinquent. Those sanctions included required participation in "a highly intensive and regimented residential program" for not less than three months, continued probation for six to twelve months with "highly structured restrictions on your activities and requirements for your behavior," or commitment "to the juvenile detention unit of the Campbell County detention facility, county jail, for no more than six months." In spite of the best efforts of the court, the transcript reflects little understanding by SWM regarding his rights or the significance of the charges he was facing. Ultimately, the court advised SWM that an attorney would be appointed to represent him, and entered a "denial" of the allegations on behalf of SWM.

[¶4]   Counsel was appointed and shortly thereafter a "Motion to Suspend Proceedings for Evaluation under 7-11-303 and 14-6-219" was filed. As grounds for the motion, counsel asserted that he had developed concerns about SWM's "understanding of the

---

[1] Both allegations were for sexual abuse of a minor in the fourth degree in violation of Wyo. Stat. Ann. § 6-2-317(a)(i) (LexisNexis 2011).

1

proceedings and nature of the allegations against him based upon [his] age, development and nature of the charges against him." The State did not object and the juvenile court granted the motion. The Order granting the motion reflects that the court determined that "Wyoming Statute § 7-11-303(b), (c), (d) *et seq*. and § 14-6-219 require an examination of the Minor for competency to proceed." The Order specifically required that a written report of the examination be filed with the Clerk of Court pursuant to Wyo. Stat. Ann. § 7-11-303(c) and Wyo. Stat. Ann. § 14-6-219 and that the report include the following:

> I. Detailed findings.
>
> II. An opinion as to whether the Minor has a mental illness or deficiency, and its probable durations.
>
> III. An opinion as to whether the Minor, as a result of mental illness or deficiency, lacks the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed.
>
> IV. A recommendation as to whether the Minor should be held in a designated facility for treatment pending determination by the Court of the issue of mental fitness to proceed.
>
> V. A recommendation as to whether the Minor, if found by the Court to be mentally fit to proceed, should be detained in a designated facility pending further proceedings.

[¶5] Subsequently, SWM was evaluated as an outpatient by a forensic psychologist associated with the Wyoming State Hospital. Her Forensic Evaluation was filed with the court in June, 2012. The report noted that SWM had been in special education classes since he began school, and that a test given by the school had assessed his intelligence quotient at 71, indicating borderline intellectual functioning. She diagnosed SWM as displaying "Attention Deficit Hyperactivity Disorder" as well as deficits in expressive language and language comprehension.

[¶6] With regard to his competency to proceed, and in compliance with the court Order, the psychologist provided conclusions regarding competency. In her report, the psychologist stated:

2

**Conclusions Regarding Competency under W.S. § 14-6-219:**

Although, [SWM] would not be expected to perform academically or cognitively at the level of an average 12-year-old, there is no information to support the involuntary commitment of this Minor. He is aware that he is in serious trouble and could be taken from his home. Thus, based on all available information, it is this examiner's opinion that [SWM], a child alleged to be delinquent, is not "suffering from mental illness or intellectual disability to a degree rendering [him] subject to involuntary commitment" and would, therefore, be deemed competent to proceed in juvenile court.

**Conclusions Regarding Capacity to Proceed under W.S. § 7-11-303:**

[SWM] is a 12-year-old male diagnosed with ADHD and an IQ of 71. He showed moderate to severe deficits in all four capacities required for fitness to proceed under W.S. § 7-11-303. Although it is possible with several months of remediation that he might attain the required factual capacities, it is unlikely that he could attain the required rational capacities in the foreseeable future. His deficits regarding rational capacities are likely directly related to his age (e.g., developmental immaturity, social immaturity) as well as his intellectual functioning, cognitive immaturity, and ADHD. Thus, it can be stated with a reasonable degree of psychological certainty that [SWM] does not have sufficient present capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with counsel to the end that any available defense may be interposed in adult criminal court. With time and formal education, [SWM] might be expected to attain these capacities in his late teens or early twenties.

[¶7]    After the report was filed, the State filed a "Motion to Strike Portions of Evaluation Beyond the Scope of the Juvenile Justice Act." In its motion the State asked the court to "strike all portions of the juvenile's forensic evaluation that were conducted pursuant to W.S. 7-11-303 as they are irrelevant to these proceedings." SWM filed a resistance to the motion contending that failure to perform a proper competency evaluation impacted SWM's constitutional due process rights. SWM contended that Wyo. Stat. Ann. § 14-6-219 and the remainder of the Juvenile Justice Act were "silent on

3

what constitutes competency in juvenile court," and that competency should be determined in accordance with the standards set forth in Wyo. Stat. Ann. § 7-11-303.

[¶8]   After a hearing, the juvenile court granted the motion.  The juvenile court determined that it would not consider that portion of the psychologist's evaluation dealing with SWM's competency to stand trial as an adult criminal defendant.   It explained in  its "Order Determining the Court will Disregard the Portion of the Evaluation Concerning a Conclusion as to the Minor's Competency Pursuant to W.S. 7-11-303" that the statute is "clear and unambiguous" and applies "at any stage of a **criminal proceeding**."  (Emphasis in original.)  It continued that, "given the nature of juvenile proceedings (i.e. the fact they are special civil proceedings and not criminal proceedings) and the stated goals of juvenile proceedings (namely to provide treatment, training and rehabilitation for juvenile offenders), W.S. § 7-11-303 has no application in the case at bar and this determination does not amount to a denial of the Minor's due process rights."  In the Order, the court concluded that it would disregard that portion of the report entitled "Conclusions Regarding Capacity to Proceed under W.S. § 7-11-303."

[¶9]   In response, SWM  sought a second competency evaluation and a hearing to determine competency.  After a hearing, the district court denied the motion for a second competency evaluation and found that SWM was competent to proceed. The court explained in its order:  "The Court having received and reviewed the Forensic Evaluation of the juvenile by the Wyoming State Hospital, finds that the juvenile does not suffer from a mental illness or intellectual disability to a degree [rendering] him subject to involuntary commitment at the Wyoming State Hospital or Wyoming Life Resource Center and is competent to proceed."  SWM filed a petition for writ of review with this Court, seeking review of the juvenile court's decision.  We granted the petition.  The proceedings below have been stayed pending our decision.

## *STANDARD OF REVIEW*

[¶10]  "The appellant's claim that his constitutional due process rights have been violated is reviewed *de novo* by this Court." *In re CT*, 2006 WY 101, ¶ 8, 140 P.3d 643, 646 (Wyo. 2006).  With particular regard to the issues before us, we have said that "the standard of competency is . . . a question of law which we review *de novo*." *Deshazer v. State*, 2003 WY 98, ¶ 12, 74 P.3d 1240, 1244-45 (Wyo. 2003), quoting *Lafferty v. Cook*, 949 F.2d 1546, 1550 (10th Cir. 1991).  To the extent this case raises questions of statutory interpretation, those are also questions of law that we review *de novo*. *Qwest Corp. v. State*, 2006 WY 35, ¶ 8, 130 P.3d 507, 511 (Wyo. 2006).

## *DISCUSSION*

[¶11]  To begin our discussion, it is helpful to capsulize the positions of the parties. SWM contends that a minor subject to a delinquency petition is entitled to a competency

4

determination incident to his constitutionally protected due process rights. The State does not appear to challenge that assertion. The disagreement relates to the applicable standards for determining the competency of a minor. SWM contends that there is no specific test for competency set forth in Wyoming's Juvenile Justice Act, Wyo. Stat. Ann. §§ 14-6-201 *et seq.*, and that competency should be evaluated using the standards set forth in the Wyoming Criminal Code, Wyo. Stat. Ann. §§ 7-11-301 *et seq.* Petitioner claims that the juvenile court erred by applying an incorrect standard in reaching the determination that he was competent. The State contends that the competency of a juvenile in delinquency proceedings is governed by Wyo. Stat. Ann. § 14-6-219. It asserts that actions brought under the Juvenile Justice Act are civil in nature, not criminal, and that the competency provisions set forth in Wyoming's Criminal Code are inapplicable in juvenile proceedings. The State contends that the juvenile court properly determined that SWM was competent to proceed with the delinquency adjudication.

[¶12] In criminal court, it has "long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975); *see also Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Our decisions also have consistently recognized that "mental competency to stand trial is an element of the due process right to a fair trial." *Loomer v. State*, 768 P.2d 1042, 1045 (Wyo. 1989); *Fletcher v. State*, 2010 WY 167, ¶ 13, 245 P.3d 327, 331 (Wyo. 2010). The competency of an accused is broadly defined as his present ability to understand the nature of the proceedings against him and to participate in his own defense. *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

[¶13] In 1967, the United States Supreme Court recognized that children in juvenile courts also have due process rights, stating that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). The Court explained that it was not deciding whether the full spectrum of due process rights applicable to criminal defendants also applied in juvenile court, *id.* at 10-11, 87 S.Ct. at 1435, but it specifically held that juveniles have the right to notice of the charges against them, *id.* at 33, 87 S.Ct. at 1446-47, the right to counsel, *id.* at 41, 87 S.Ct. at 1451, the privilege against self-incrimination, *id.* at 55, 87 S.Ct. at 1458, and the right to confront witnesses against them. *Id.* at 57, 87 S.Ct. at 1459. In subsequent decisions, the Court expanded the rights of juveniles to include protection from double jeopardy, *Breed v. Jones*, 421 U.S. 519, 541, 95 S.Ct. 1779, 1791, 44 L.Ed.2d 346 (1975), and the requirement that charges against them must be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970). The Court has, however, never specifically stated that juveniles have the due process right not to be adjudicated delinquent unless they are competent. We have recognized that *Gault* "provides juveniles in delinquency proceedings the rights

which are recognized as constitutional due process under the Fourteenth Amendment, including a notice of the charges, right to counsel, right of confrontation at cross-examination, and privilege against self-incrimination." *Hansen v. State*, 904 P.2d 811, 822 (Wyo. 1995). *See also In re LDO v. State*, 858 P.2d 553, 556 (Wyo. 1993).

[¶14] One of the stated purposes of Wyoming's Juvenile Justice Act is to "provide a simple judicial procedure through which the provisions of this act are executed and enforced and in which the parties are assured a fair and timely hearing and their constitutional and other legal rights recognized and enforced." Wyo. Stat. Ann. § 14-6-201(c)(vi). The act specifically provides that children in juvenile court proceedings have the right to notice of the charges against them, the right to counsel, the privilege against self-incrimination, the right to confront adverse witnesses, and the requirement that charges against them must be proven beyond a reasonable doubt. Wyo. Stat. Ann. §§ 14-6-222, -223, and -225. Although the Juvenile Justice Act does not explicitly address the question, we have recognized that double jeopardy attaches in juvenile proceedings. *Haynes v. State*, 2012 WY 151, ¶ 9, 288 P.3d 1225, 1227 (Wyo. 2012).

[¶15] Wyo. Stat. Ann. § 14-6-219(a), which is analyzed more fully later in this opinion, provides that the juvenile court "may order the child to be examined by a licensed and qualified physician, surgeon, psychiatrist or psychologist designated by the court to aid in determining the physical and mental condition of the child." The statute does not explicitly say what purposes may be served by such an examination. It is a reasonable inference, however, that an evaluation of the juvenile's competency to proceed with the adjudication is an appropriate purpose for an examination of the juvenile's mental condition. The Supreme Court of Indiana reached a similar conclusion when it interpreted a comparable statute allowing the juvenile court to order "medical examinations and treatment" of a child. "Although the statute does not specifically mention 'competency,' given a juvenile court's flexibility in addressing the needs of children and acting in their best interest, we conclude that this statute allows for the examination and/or treatment of a child after a delinquency petition has been filed in order to determine the child's competency." *In re K.G.*, 808 N.E.2d 631, 639 (Ind. 2004).

[¶16] Many other states have concluded that children have the due process right to be subject to juvenile proceedings only if they are competent. SWM cites *State ex rel. Dandoy v. Superior Court*, 127 Ariz. 184, 187, 619 P.2d 12, 15 (1980), which stated that, "In the context of a juvenile delinquency adjudicatory proceeding the right not to be tried or convicted while incompetent has been held to be a fundamental right." The Arizona Supreme Court noted that the United States Supreme Court established "that due process requires that a juvenile have notice of the charges against him and the right to assistance of counsel." *Id.* It reasoned that these rights "would be meaningless if the juvenile, through mental illness, was unable to understand the charges or assist in her own defense." *Id.* It also cited *In re Welfare of S.W.T.*, 277 N.W.2d 507, 511 (Minn. 1979), which stated that:

6

> The competency of an accused is generally defined as his ability to understand the nature of the proceedings against him and to participate in his own defense. See, *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Rule 20.01, subd. 1, Rules of Criminal Procedure. Although the general area of competency is usually discussed in connection with adult criminal proceedings, we regard the right not to be tried or convicted while incompetent to be a fundamental right, even in the context of a juvenile delinquency adjudicatory proceeding.

Decisions from several jurisdictions have extended the due process right to proceed only if competent to children in juvenile courts. *E.g.*, *In re Bailey*, 782 N.E.2d 1177, 1179 (Ohio App. 2002); *In re Carey*, 615 N.W.2d 742, 748 (Mich. App. 2000); *In re K.G.*, 808 N.E.2d at 632. When it considered the issue, the North Dakota Supreme Court said,

> we now hold that juveniles have a due process right not to be subjected to the adjudicative stage of juvenile proceedings while incompetent. By so holding, we join a number of other jurisdictions that have previously considered the issue and have similarly concluded the right not to be tried while mentally incompetent is as fundamental in juvenile proceedings as it is in adult criminal trials.

*In re T.S.*, 2011 ND 118, ¶ 18, 798 N.W.2d 649, 655 (N.D. 2011). It cited cases with similar rulings from nine other states.

[¶17] We are persuaded by the reasoning of these decisions. The Wyoming Juvenile Justice Act and our decisions recognize that children in juvenile court have due process rights. The right to counsel is of little value to a juvenile if he is incompetent to assist that counsel in presenting a defense. Similarly, the right to notice of the charges is futile if the juvenile is not competent to comprehend them. A juvenile's recognized due process rights are pointless if the child is not competent to exercise them. We therefore hold that a child in juvenile court has a due process right not to proceed with the adjudication of his delinquent status unless he is competent.

[¶18] The juvenile court in this case did make the determination that SWM was competent to proceed. As noted earlier, the question is whether the court applied the correct standards in determining SWM's competency. The court relied on the provision of the Wyoming Juvenile Justice Act dealing with competence, Wyo. Stat. Ann. § 14-6-219, which provides in relevant part as follows:

7

(a)  Any time after the filing of a petition, on motion of the district attorney or the child's parents, guardian, custodian or attorney or on motion of the court, the court may order the child to be examined by a licensed and qualified physician, surgeon, psychiatrist or psychologist designated by the court to aid in determining the physical and mental condition of the child.  The examination shall be conducted on an outpatient basis, but the court may commit the child to a suitable medical facility or institution for examination if deemed necessary.  Commitment for examination shall not exceed fifteen (15) days. . . .

(b)  If a child has been committed to a medical facility or institution for mental examination prior to adjudication of the petition and if it appears to the court from the mental examination that the child is competent to participate in further proceedings and is not suffering from mental illness or intellectual disability to a degree rendering the child subject to involuntary commitment to the Wyoming state hospital or the Wyoming life resource center, the court shall order the child returned to the court without delay.

(c)  If it appears to the court by mental examination conducted before adjudication of the petition that a child alleged to be delinquent is incompetent to participate in further proceedings by reason of mental illness or intellectual disability to a degree rendering the child subject to involuntary commitment to the Wyoming state hospital or the Wyoming life resource center, the court shall hold further proceedings under this act in abeyance. The district attorney shall then commence proceedings in the district court for commitment of the child to the appropriate institution as provided by law.

(d)  The juvenile court shall retain jurisdiction of the child . . . pending final determination of the commitment proceedings in the district court.  If proceedings in the district court commit the child to [a] facility or institution for treatment and care of people with a mental illness or an intellectual disability, the petition shall be dismissed and further proceedings under this act terminate.  If proceedings in the district court determine the child does not have a mental illness or an intellectual disability to a degree

8

rendering him subject to involuntary commitment, the court shall proceed to a final adjudication of the petition and disposition of the child under the provisions of this act.

The juvenile court ordered SWM to be examined and, as noted above, asked the psychologist to evaluate SWM under both Wyo. Stat. Ann. § 14-6-219 and Wyo. Stat. Ann. § 7-11-303. With regard to the first statute, the report concluded that SWM "is not 'suffering from mental illness or intellectual disability to a degree rendering [him] subject to involuntary commitment' and would, therefore, be deemed competent to proceed in juvenile court." With regard to Wyo. Stat. Ann. § 7-11-303, the report also concluded that

> it can be stated with a reasonable degree of psychological certainty that [SWM] does not have sufficient present capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with counsel to the end that any available defense may be interposed in adult criminal court.

[¶19] The State filed a motion seeking to strike those portions of the evaluation report dealing with SWM's competence to proceed under Wyo. Stat. Ann. § 7-11-303. It asserted that proceedings in juvenile court are not criminal in nature, and the competency standards of the criminal code do not apply. SWM opposed the motion, arguing that because "the Juvenile Justice Act is silent on what constitutes competency in juvenile court, Wyoming Statute § 7-11-303 is the proper statute to govern the inquiry into what is competency to proceed." He further asserted that "The Wyoming Rules of Criminal Procedure apply to delinquency proceedings unless inconsistent with the Juvenile Justice Act. W.R.Cr.P. 1(a)," quoting *KC v. State*, 2011 WY 108, ¶ 15, 257 P.3d 23, 27 (Wyo. 2011).

[¶20] The juvenile court declined to strike any portion of the psychologist's report, but did rule that it would disregard the conclusions relating to Wyo. Stat. Ann. § 7-11-303. The court stressed the language of that statute providing that it "applies at any stage of a **criminal proceeding**." (Emphasis in original.) Because juvenile proceedings are not criminal proceedings, the court ruled that Wyo. Stat. Ann. § 7-11-303 did not apply. In addition, the juvenile court quoted from *In re ALJ*, 836 P.2d 307, 313 (Wyo. 1992):

> By enacting a juvenile code separate from the criminal code, Wyoming's legislature has recognized that juveniles and adults are not similarly situated. Juvenile proceedings are designed to rehabilitate and protect the juvenile, not to punish him. These goals of rehabilitation and protection are

9

reflected throughout the juvenile code. Proceedings in juvenile court are equitable as opposed to being criminal. Juveniles are not convicted; they are merely adjudicated delinquents. By treating juveniles more gently than it treats adults, the legislature is compensating for juveniles' inherent lack of experience and maturity.

Based on "the nature of juvenile proceedings (i.e. the fact they are special civil proceedings and not criminal proceedings) and the stated goals of juvenile proceedings (namely to provide treatment, training and rehabilitation for juvenile offenders)," the juvenile court ruled that Wyo. Stat. Ann. § 7-11-303 "has no application in the case at bar." Following a hearing to determine SWM's competency to proceed, the juvenile court found "that the juvenile does not suffer from a mental illness or intellectual disability to a degree [rendering] him subject to involuntary commitment at the Wyoming State Hospital or Wyoming Life Resource Center and is competent to proceed."

[¶21] The juvenile court's perception of the nature and stated goals of juvenile proceedings is certainly accurate. However, we note that treatment, training, and rehabilitation of juvenile offenders occurs only if they are adjudicated delinquent. In the case quoted by the court, we held that the juvenile court must have flexibility in formulating the appropriate disposition, and that certain due process rights do not apply in the dispositional phase of a juvenile proceeding. But we also noted the "difference between the adjudicative and dispositional phases," and recognized that "minors' constitutional rights available in the adjudicatory stage are not necessarily applicable in the dispositional stage." *In re ALJ*, 836 P.2d at 311. SWM's juvenile proceedings were still in the adjudicative phase. As the District of Columbia Court of Appeals explained:

> The condition precedent for the court's ordering of a rehabilitative disposition in a juvenile delinquency proceeding is a factual determination that the juvenile has violated a provision of the criminal law. Even if all parties to a juvenile delinquency proceeding share the goal of finding a disposition in the child's best interests, and the proceedings may be less adversarial than adult prosecution, such proceedings clearly present an opportunity for factual disputes. . . . While counsel as well as a guardian ad litem are available to juvenile delinquents, as they were to appellant, both are limited in their ability to prepare a defense by the juvenile's knowledge, understanding, and ability to reconstruct and communicate the facts. . . . Consequently, we find no inconsistency between the goals of the juvenile justice system, as reflected in our statutory scheme, and the basic principle that the accuracy of the factfinding determination –

10

and the accused's own minimal contribution thereto – is part of the fundamental fairness inherent in due process.

*In re W.A.F.*, 573 A.2d 1264, 1267 (D.C. 1990) (internal footnote and citations omitted). We, too, find no inconsistency between the goals of the Wyoming Juvenile Justice Act and the right of a juvenile to proceed to adjudication only if he is competent.

[¶22] On appeal, SWM maintains that the Juvenile Justice Act does not define the term "competent to participate in further proceedings," and provides no standards, factors, or requirements for the juvenile court to consider in determining competence. To fill that gap, SWM contends that the juvenile court should adopt the standards and requirements for determining competency in criminal court. Wyo. Stat. Ann. § 7-11-303(c)(iii) indicates that the test is:

> whether the accused, as a result of mental illness or deficiency, lacks capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed.

In addition, we note that Wyo. Stat. Ann. § 7-11-302 provides that:

> (a)    No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity, to:
>
> (i)    Comprehend his position;
>
> (ii)    Understand the nature and object of the proceedings against him;
>
> (iii)    Conduct his defense in a rational manner; and
>
> (iv)    Cooperate with his counsel to the end that any available defense may be interposed.

[¶23] The State continues to assert that Wyo. Stat. Ann. §§ 7-11-302 and -303 cannot apply because they are meant to govern criminal proceedings, and juvenile court is not criminal court. The State asserts that the proper standards are found in Wyo. Stat. Ann. § 14-6-219(b):

11

if it appears to the court from the mental examination that the child is competent to participate in further proceedings and is not suffering from mental illness or intellectual disability to a degree rendering the child subject to involuntary commitment to the Wyoming state hospital or the Wyoming life resource center, the court shall order the child returned to the court without delay.

Below, the State contended that, under Section (b), there are only two possibilities: either the child is "competent to participate in further proceedings," or he is "suffering from mental illness or intellectual disability to a degree rendering the child subject to involuntary commitment." Because it is undisputed that SWM is not subject to involuntary commitment, the State asserted that he is competent to proceed to adjudication. The State's position was clearly reflected in the psychologist's report, which concluded that SWM, "a child alleged to be delinquent, is not 'suffering from mental illness or intellectual disability to a degree rendering [him] subject to involuntary commitment' and would, therefore, be deemed competent to proceed in juvenile court." It appears from the transcript of the competency hearing that this was also the standard applied by the juvenile court. The State appears to have changed its position in this appeal, recognizing that the statute requires the juvenile court to decide "two questions: whether SWM was competent to participate in further proceedings; and whether he suffered from a mental illness or intellectual disability so serious as to subject him to involuntary commitment."

[¶24] We agree with the State's position on appeal that the two are separate questions. The juvenile court is not required to find either that a juvenile is competent to proceed or that he is subject to involuntary commitment. It might also find that a juvenile is not so severely mentally ill or intellectually disabled as to require involuntary commitment, but still not competent to proceed with adjudication. However, the chief problem with the State's position is that it offers no guidance for the juvenile court to use in determining whether a juvenile is competent to proceed with adjudication.[2] Juvenile courts cannot be expected to make competency determinations without any standards. As we said in *Follett*, ¶ 8, 132 P.3d at 1158, a defendant is competent if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and a

_____

[2] An additional problem with the State's position is that Wyo. Stat. Ann. § 14-6-219(b) does not actually apply to SWM. Section (b) applies only if a child has been committed to a medical facility or institution for mental examination. SWM was examined as an out-patient. Further, sections (c) and (d) apply only to children subject to involuntary commitment, and it is undisputed that SWM is not. The statute does not specify how to deal with a child examined as an out-patient who may be incompetent to participate in further proceedings, but not to a degree rendering him subject to involuntary commitment.

rational as well as factual understanding of the proceedings against him. Unless a juvenile court considers these basic components of competence – a juvenile's capacities to comprehend his position, understand the proceedings, conduct a rational defense, and cooperate with counsel – then there is insufficient protection of a juvenile's due process right not to face adjudication unless competent.

[¶25] Contrary to the State's argument, we conclude that Wyo. Stat. Ann. § 7-11-302 and to some extent Wyo. Stat. Ann. § 7-11-303, should be applied in juvenile court. W.R.Cr.P. 1(a) provides that, "When not inconsistent with the Juvenile Court Act, these rules shall also apply in delinquency proceedings." W.R.Cr.P. 54(b) echoes this provision: "Unless inconsistent with the Juvenile Court Act these rules shall apply in all juvenile cases involving allegations that a child is in need of supervision or delinquent." With specific regard to competency, W.R.Cr.P. 12(c) provides:

> If it appears at any stage of a criminal proceeding by motion or upon the court's own motion, that there is reasonable cause to believe that the defendant has a mental illness or deficiency making the defendant unfit to proceed, all further proceedings shall be suspended and an examination ordered as required by W.S. 7-11-301, *et seq*.

W.R.Cr.P. 12(c) is not inconsistent with the Juvenile Justice Act. To the contrary, it is quite similar to Wyo. Stat. Ann. § 14-6-219(a) in providing that a mental examination may be ordered. W.R.Cr.P. 12(c) is therefore applicable in juvenile proceedings, and it expressly incorporates Wyo. Stat. Ann. §§ 7-11-302 and -303.

[¶26] We also find nothing in Wyo. Stat. Ann. § 7-11-302 that is inconsistent with the Juvenile Justice Act. In setting forth the basic components of competence – capacities to comprehend his position, understand the proceedings, conduct a rational defense, and cooperate with counsel – this statute is entirely consistent with the Juvenile Justice Act's stated purpose of ensuring parties that "their constitutional and other legal rights [are] recognized and enforced." Wyo. Stat. Ann. § 14-6-201(c)(vi). We note that some of the procedural aspects of Wyo. Stat. Ann. § 7-11-303 may be inconsistent with the Juvenile Justice Act. For example, Wyo. Stat. Ann. § 7-11-303(b) provides that if a person is committed for evaluation, "the commitment shall continue no longer than a thirty (30) day period." In the Juvenile Justice Act, Wyo. Stat. Ann. § 14-6-219(a) limits commitment for examination to fifteen days. The inconsistent procedural provisions of Wyo. Stat. Ann. § 7-11-303 may not apply in juvenile court, but the basic standards for determining competency as set forth in Wyo. Stat. Ann. §§ 7-11-302 and -303 do apply.

[¶27] Other states faced with an absence of explicit standards for juvenile competency have reached this same conclusion. For example, the Ohio Court of Appeals recognized that, while state statutes provided "the standard by which an adult defendant may

13

overcome the presumption of competency, no such statutory standard exists for juveniles." *In re Johnson*, 1983 Ohio App. LEXIS 14017, *12-13 (Ohio App. 1983). Accordingly, it adopted the adult competency standard for use in juvenile court. As the Arizona Supreme Court said in *Dandoy*, 619 P.2d at 15, "It appears that the determination of mental competency of a juvenile for trial is one of those instances where the procedure followed in adult prosecution must be applied to juvenile cases."

[¶28] The State argues against applying the standards of competency for criminal defendants in juvenile proceedings on the basis that, "It stands to reason, of course, that even a normal juvenile often will not have the same 'rational' understanding of the proceedings as an adult would, nor be able to consult with his lawyer with the same understanding." *In re W.A.F.*, 573 A.2d at 1268 n.1 (Farrell, J., concurring). Several decisions from other states, cited above, expressed this same concern. For example, in *In re Carey*, 615 N.W.2d at 748, the court concluded that, "in the absence of other applicable rules or statutes," the standards for determining the competency of a criminal defendant "should be used to assure that the due process rights of a juvenile are protected." It continued:

> In reaching this conclusion, however, we further note that it is possible that a juvenile, merely because of youthfulness, would be unable to understand the proceedings with the same degree of comprehension an adult would. *Causey*, *supra* at 476. See Grisso, *The Competence of Adolescents as Trial Defendants*, 3 Psych, Pub Pol'y & L 3, 14 (1997). Accordingly, we further hold that, in juvenile competency hearings, competency evaluations should be made in light of juvenile, rather than adult, norms. *William*s, *supr*a at 242. A juvenile need not be found incompetent just because, under adult standards, the juvenile would be found incompetent to stand trial in a criminal proceeding.

*Id*. *See also In re Bailey*, ¶ 11, 782 N.E.2d at 1179 (The competency standard for criminal defendants also "governs the competency evaluations of juveniles, so long as it is applied in light of juvenile rather than adult norms."); *In re J.M.*, 769 A.2d 656, 662 (Vt. 2001); *State in Interest of Causey*, 363 So.2d 472, 476 (La. 1978); *Golden v. State*, 21 S.W.3d 801, 803 (Ark. 2000).

[¶29] This approach is consistent with our previous discussions of the rights of juveniles. In several cases considering the admissibility of custodial statements by minors, we have said that the test of admissibility is the same for minors as for adults: whether, under the totality of the circumstances at the time, the statement was given voluntarily, knowingly, and intelligently. *Jahnke v. State*, 692 P.2d 911, 923 (Wyo. 1984), citing *Mayer v. State*, 618 P.2d 127 (Wyo. 1980); *Mullin v. State*, 505 P.2d 305

14

(Wyo. 1973), *cert. denied*, 414 U.S. 940, 94 S.Ct. 245, 38 L.Ed.2d 166 (1973); *Jarrett v. State*, 500 P.2d 1027 (Wyo. 1972); and *Mortimore v. State*, 24 Wyo. 452, 161 P. 766 (1916). However, as we further explained,

> In these cases we have held that the fact that the individual being questioned is a juvenile is simply a factor to be considered in the totality of the circumstances in order to determine whether the waiver was efficacious. This view is consistent with that espoused in *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197, *reh. denied* 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979), in which the Supreme Court of the United States said:
>
>> This totality-of-the circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits – indeed, it mandates – inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Jahnke*, 692 P.2d at 923 (quotation marks omitted). Similarly, when evaluating the competency of a child in juvenile proceedings, it is appropriate to consider "the juvenile's age, experience, education, background, and intelligence, and . . . capacity to understand." This approach is consistent with our prior observation that, "By treating juveniles more gently than it treats adults, the legislature is compensating for juveniles' inherent lack of experience and maturity." *In re ALJ*, 836 P.2d at 313. Accordingly, we hold that the statutory standards for determining the competency of a defendant to stand trial, set forth in Wyo. Stat. Ann. §§ 7-11-302 and -303, are also the standards to use in determining the competency of a child to participate in adjudication proceedings in juvenile court, but those standards must be applied in light of juvenile norms rather than adult norms.

[¶30] Although the juvenile court ordered a competency evaluation and ruled that SWM was competent to proceed, it did not evaluate SWM under the correct standards. The juvenile court explicitly declined to consider those standards set forth in Wyo. Stat. Ann.

15

§§ 7-11-302 and -303. Because SWM was evaluated using incorrect standards, his due process right not to proceed unless competent was not properly protected.

[¶31] We also note that the psychologist who evaluated SWM did not apply the proper standards. The psychologist offered the opinion that SWM "appeared to be less familiar with general legal terms and concepts than the average adult defendant." Because SWM was twelve at the time, he should not have been compared to the average adult defendant, but to an average child of the same age.[3]

[¶32] The decision of the juvenile court is reversed, and the case remanded for proceedings consistent with this opinion.

_____

[3] We also note that this due process right of competency is based on the "present" abilities of the person being evaluated. *Dusky*, 362 U.S. at 402, 80 S.Ct. at 789. In SWM's reevaluation, he must be compared to the average youth of his age at the time of the reevaluation.