The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **May 23, 2023**

**No. A-1-CA-39732**

**MCKENZIE JOHNSON,**

    Plaintiff-Appellant,

v.

**BOARD OF EDUCATION FOR ALBUQUERQUE PUBLIC SCHOOLS and MARY JANE EASTIN,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Court Judge**

Parnall & Adams Law
Charles S. Parnall
David M. Adams
Albuquerque, NM

ACLU of New Mexico
Leon Howard
Maria Martinez Sánchez
Preston Sanchez
Albuquerque, NM

NM Center on Law and Poverty
Sovereign Hager
Verenice Peregrino Pompa
Albuquerque, NM

for Appellant

Walsh Gallegos Treviño Kyle & Robinson, P.C.
Roxie P. Rawls-De Santiago
Karla Schultz
Stephanie Mendivil
Albuquerque, NM

for Appellee Board of Education for the Albuquerque Public Schools

Robles, Rael and Anaya
Luis Robles
Albuquerque, NM

for Appellee Mary Jane Eastin

Egolf + Ferlic +Martinez + Harwood, LLC
Kristina Martinez
Jeff Dan Herrera
Santa Fe, NM

for Amicus Curiae Equality New Mexico

Lysette Romero Córdova, Supervising Attorney
Elisa Cibils, Clinicial Law Student
Emily Romero, Clinical Law Student
Albuquerque, NM

for Amici Curiae Native American Budget and Policy Institute and Native American Disability Law Center

# OPINION

**HANISEE, Judge.**

{1} This appeal asks whether a public secondary school in New Mexico can be classified as a public accommodation under the pre-2023 iteration of the New Mexico Human Rights Act (the NMHRA), NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through 2021), and therefore subject to the requirements of that statute.[1] Although one interpretation of historic New Mexico Supreme Court precedent suggests otherwise, *see Hum. Rts. Comm'n of N.M. v. Bd. of Regents of Univ. of N.M. Coll. of Nursing* (*Regents*), 1981-NMSC-026, ¶ 11, 95 N.M. 576, 624 P.2d 518 (determining a state university not to be a public accommodation within the meaning of the NMHRA), we conclude differently here based on the plain language of the NMHRA, the differing circumstances of this case, and our Supreme Court's own language declaring *Regents*' limited prospective application, even to the very state university at issue therein.

{2} Plaintiff appeals the grant of Albuquerque Public Schools (APS) and teacher Mary Jane Eastin's (collectively, Defendants') motion to dismiss under the NMHRA. The NMHRA makes it unlawful for "any person in any public

---

[1]Since briefing was completed in this case, the Legislature amended Section 28-1-2(H) of the NMHRA to restate the definition of "public accommodation" to expressly include "any governmental entity" in addition to "any establishment." *See* 2023 N.M. Laws, ch. 29, § 1(H)) (signed into law as H.B. 207, Mar. 24, 2023).

accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any person because of race, religion, color," or other protected class. Section 28-1-7(F). The district court determined Plaintiff had failed to state a claim because, under *Regents*, APS is not a public accommodation for purposes of the NMHRA. *Regents* held that "[u]niversities are not public accommodations in the ordinary and usual sense of the words," as indicated by the historical statutory definition and analogous nineteenth century United States Supreme Court precedent, *Regents*, 1981-NMSC-026, ¶¶ 12-15, but declared its ruling "should be construed narrowly and is limited to the [u]niversity's manner and method of administering its academic program." *Id.* ¶ 16. Indeed, our Supreme Court pointedly declined to exclude universities altogether from the reach of the NMHRA, stating that *Regents* did not answer "the question of whether in a different set of circumstances the [u]niversity would be a 'public accommodation' and subject to the jurisdiction of the [NMHRA]." *Id. Regents* provided no guidance, however, as to what might have led to a different outcome regarding the university then under review. Upon consideration of plain language within the NMHRA and what guiding principles we can discern in *Regents*, we reach a different outcome in this case. We hold that Cibola High School, a secondary public school, is a public accommodation under the NMHRA, and therefore reverse the district court's contrary determination.

## BACKGROUND

{3}    Plaintiff alleges the following facts in her complaint: Plaintiff is a Native American who, at the time the underlying events occurred, was a sixteen-year-old student enrolled at Cibola High School, a school under the supervision of APS. During an in-classroom Halloween activity on October 31, 2018, Plaintiff's Advanced Placement English teacher, Eastin, cut off three inches of hair from another Native American student and sprinkled it on that student's desk. Eastin then turned to Plaintiff and—in an apparent reference to a blood smear as part of Plaintiff's Halloween costume—asked, "What are you supposed to be, a bloody Indian?" Following these events, Plaintiff alleges she "no longer felt welcome in the school environment and her behavior fundamentally changed at school."

{4}    Plaintiff filed a complaint alleging a violation of the NMHRA, Section 28-1-7(F), against Defendants, in addition to a claim of negligent operation of a school under the New Mexico Torts Claims Act that does not pertain to this appeal. Defendants filed a motion to dismiss, arguing that public schools are not public accommodations in the administration of their academic programs. After a hearing, the district court granted the motion, determining that public secondary schools are not sufficiently distinct from universities to warrant a different outcome than that in *Regents*.

3

**DISCUSSION**

{5}     The sole issue raised by Plaintiff is whether the district court erred in determining APS not to be a public accommodation. "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) [NMRA] is reviewed de novo." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). "The [district] court's conclusions of law are not binding upon us; we may draw our own legal conclusions." *Trigg v. Allemand*, 1980-NMCA-151, ¶ 15, 95 N.M. 128, 619 P.2d 573.

{6}     Although our Supreme Court did conclude the aspect of the state university under review in *Regents* was insufficient to establish the school as public accommodation—specifically, "manner and method of administering its academic program"—we abide by the stated instruction that its holding "should be construed narrowly." 1981-NMSC-026, ¶ 16. "The Court of Appeals must follow applicable precedents of our Supreme Court, but in appropriate situations we may consider whether Supreme Court precedent is applicable." *State v. Travarez*, 1983-NMCA-003, ¶ 5, 99 N.M. 309, 657 P.2d 636; *see id.* (concluding in the context of criminal

4

sentencing that "[a]lthough the case law presented by the [s]tate has never been expressly overruled, it is clear that it no longer has precedential value in light of the more recent legislative enactments"). Regarding *Regents*, we have previously said that our Supreme Court's pointed restraint therein signaled that this Court should "independently evaluate the applicability of the NMHRA in all future cases." *Elane Photography, LLC v. Willock*, 2012-NMCA-086, ¶ 12, 284 P.3d 428. We likewise observed that "[n]o other guidance was provided by [our] Supreme Court to address the Legislature's expansion of the NMHRA to other public accommodations outside the unique academic circumstances analyzed in *Regents*." *Elane Photography, LLC*, 2012-NMCA-086, ¶ 11. We interpret *Regents* to be a case that most directly pertains to state universities, and more specifically, to administration of the academic programs available to students or applicants to the university under review. By contrast, we initially observe two circumstances that distinguish this case from *Regents*: First, Cibola High School provides a constitutionally mandated function; that is, the provision of secondary education to primarily minor New Mexico residents. *See* N.M. Const. art. XII, § 1. Second, this cases arises not from any specified manner or method of administration, such as admission processes or, in *Regents*, the decision by university officials not to permit a Black nursing student to retake a course after having not received a passing grade in her first such effort, 1981-NMSC-026, ¶ 1, effectuated by APS or Cibola High School; rather, it arises

from the spontaneous actions and remark undertaken and spoken by a single teacher on a single occasion as alleged by Plaintiff. With this in mind, we proceed to apply general principles of statutory interpretation in order to identify the scope of the NMHRA as applied to the circumstance herein, recognizing that equating state universities as a whole, or even the university to which *Regents* narrowly applied, and public secondary schools as a stand-alone inquiry—as Defendants suggest—is not outcome determinative.

**Plain Language**

{7}    "The guiding principle in statutory construction requires that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Tucson Elec. Power Co. v. N.M. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 8, 456 P.3d 1085 (internal quotation marks and citation omitted). "We use the plain language of the statute as the primary indicator of legislative intent." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (alterations, internal quotation marks, and citation omitted). "However, if the plain meaning of the statute is doubtful, ambiguous, or if an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, we will construe the statute according to its obvious spirit or reason." *Id.* (alterations, internal quotation marks, and citation omitted).

{8} The Legislature provided a definition for "public accommodation" in the NMHRA statute to mean "any establishment that provides or offers its services, facilities, accommodations or goods to the public, but does not include a bona fide private club or other place or establishment that is by its nature and use distinctly private." Section 28-1-2(H). This definition exhibits two points of potential ambiguity when applied to public secondary schools: the term "establishment" and the phrase "provides or offers its services . . . to the public."

{9} First, the general meaning of "establishment" plainly applies to businesses and commercial enterprises, but cannot be read to exclude public institutions such as secondary schools. To give words not defined in a statute their ordinary meaning, we often "consult common dictionary definitions." *State v. Vest*, 2021-NMSC-020, ¶ 14, 488 P.3d 626. *Webster's Third New International Dictionary* in part defines an "establishment" as "1:d: a more or less fixed and usu[ally] sizable place of business or residence together with all the things that are an essential part of it," and more specifically, "1:e: a public or private institution (as a school or hospital)." *Establishment*, *Webster's Third New Int'l Dictionary* (Unabridged ed. 2002). Similarly, the relevant definition in the current edition of *Black's Law Dictionary* defines "establishment" as "[a]n institution or place of business." *Establishment*, *Black's Law Dictionary* (11th ed. 2019). A public secondary school—even if merely potentially an establishment—is decidedly an institution. *See Institution*, *Black's*

7

*Law Dictionary* (11th ed. 2019) (defining "institution" in pertinent part: "An established organization, esp[ecially] one of a public character"). The edition of *Black's Law Dictionary* that was current in 1969 at the formulation of the NMHRA defined an "establishment" as an "[i]nstitution, place where conducted and equipment; industrial plant and appurtenances; place of business and fixtures; residence with grounds, furniture, equipage, etc." *Establishment*, *Black's Law Dictionary* (4th ed. 1968). We observe that the 1968 definition carries a more commercial orientation, but this does not change that dictionaries consistently have defined establishments as including institutions for the past five decades. We easily conclude there to be an absence of ambiguity, doubt, or for that matter, contrary legislative intent, such as to make it necessary or justified to deviate from the ordinary meaning of "establishment" or "institution." Therefore, considering the language of the statute and the ordinary definitions of the words therein, we agree with Plaintiff that a public secondary school is an establishment for purposes of the NMHRA.

{10} The second point of potential ambiguity we encounter within the statutory definition of public accommodation comes from the phrase, "provides or offers its services . . . to the public." Section 28-1-2(H). Defendants contend that schools are not public accommodations because they are not "open to the public at large," as they cater their services to school-age children within a certain age range. Under

8

Defendants' argument, a public school is even less like a public accommodation than a university in *Regents* because public schools cater to "a much smaller and finite group of young people." Plaintiff argues that schools are open to the public because they are mandated to offer services to all school-age students according to Article XII, Section 1 of the New Mexico Constitution, and accordingly offer a "wide array of services and accommodations to students and families." Moreover, Plaintiff asserts that APS's adult education services, such as GED and adult literacy classes, provide services to individuals well beyond school-age years. Again, we conclude that Plaintiff gets the better of this disagreement.

{11}    Both parties focus their arguments on the statutory term "public," but that is but a smaller part of the larger phrase "provides or offers its services . . . to the public." Defendant might be correct if the only verb in the statute was "provide," but the statute also includes establishments that *offer* services to the public. *Black's Law Dictionary* provides relevant definitions for "offer" as "[t]he act or an instance of presenting something for acceptance; specif[ically], a statement that one is willing to do something for another person or to give that person something," *Offer*, *Black's Law Dictionary* (11th ed. 2019), and "public" as "[t]he people of a country or community as a whole," *Public*, *Black's Law Dictionary* (11th ed. 2019). A public school does present its services to the community as a whole, which appears to fall into the plain language of the statute.

{12} We are unpersuaded by Defendants' arguments that restrictions to an otherwise public accommodation's services based on age or place of residence are determinative parameters that demonstrate Cibola High School's, as administrated by APS, educational services are not open to the public. In looking to the purpose that underpins Plaintiff's cause of action, our Supreme Court has said that "[t]he prohibition against discrimination in public accommodations arose from the common law duties of innkeepers and public carriers to provide their services to the public without imposing unreasonable conditions." *Regents*, 1981-NMSC-026, ¶ 12. Reasonable conditions on an offer of services to the public do not render an offer meaningless or without effect. *See Conditional Offer*, *Black's Law Dictionary* (11th ed. 2019) (defining a "conditional offer" as "[a]n offer made on the stipulation that it will not take effect until some contingent prerequisite has been satisfied"). Quintessential public accommodations such as inns and taverns are not excluded from that class merely because they only rent rooms or offer alcoholic beverages to individuals over a certain age. We do not believe it to be the intent of the Legislature to exclude hotels, bars, and public transportation from being public accommodations merely because there are *reasonable* age restrictions on their services. If mere age or residence restrictions were enough to except an establishment from being open to the public, small restrictions enacted in bad faith could suddenly permit

accommodations to avoid this statute that our Legislature clearly intended to apply to govern such places of business or institutions.

{13}     Accordingly, we are persuaded that in the context of this case, the term "provides or offers its services . . . to the public" is not so ambiguous that we cannot apply a plain language reading to the statute. *See* § 28-1-2(H). The statute only expressly excepts the following from its definition of establishments that serve the public: "bona fide private club or other place or establishment that is by its nature and use distinctly private." *Id.* Although that provision may not state the only exclusions to the statute, we are persuaded by Plaintiff's argument that APS does not restrict its services in such a way that could be said to be by its nature and use distinctly private. Cibola High School, and more broadly APS, offers services to the community as a whole such that refusing educational services based on race, religion, or any other protected category would be to contravene what the Legislature intended under Section 28-1-7(F). The statutory definition of public accommodation is clear to us in its ordinary and usual sense, and it includes public secondary schools. Therefore, we hold that Cibola High School is a public accommodation for purposes of the NMHRA under the circumstances of this case.

**Historical Meaning**

{14}     Despite our conclusion that the plain language of the NMHRA directs the outcome reached above, had the statute been ambiguous as to its application to

11

Cibola High School in this case, such that we were required to construe the statute "according to its obvious purpose," we believe the same outcome is appropriate. *See N.M. Boys & Girls Ranch v. N.M. Bd. of Pharmacy*, 2022-NMCA-047, ¶ 19, 517 P.3d 248 (internal quotation marks and citation omitted). We briefly explain.

{15} In defining a "public accommodation" in *Regents*, our Supreme Court looked to the "historical and traditional meanings," 1981-NMSC-026, ¶ 11, including the NMHRA's predecessor, the New Mexico Public Accommodations Act, 1955 N.M. Laws, ch. 192, §§ 1-7 (signed into law as H.B. 52, Mar. 24, 1955), and federal civil rights jurisprudence and enactments such as the *Civil Rights Cases*, 109 U.S. 3 (1883) and 42 U.S.C. § 2000a(b) (1964). *See Regents*, 1981-NMSC-026, ¶¶ 12-14. We do so as well, bearing in mind the NMHRA's overarching purpose: "to promote the equal rights of people within certain specified classes by protecting them against discriminatory treatment." *Elane Photography, LLC*, 2013-NMSC-040, ¶ 13. We must also be mindful that the differing result we reach in this case is not afoul of *Regents*.

{16} The 1955 Public Accommodations Act included the following kinds of establishments as public accommodations: inns, taverns, roadhouses, hotels, motels, buffets, saloons, barrooms, and any store or enclosure where spirituous or malt liquors are sold, ice cream parlors, soda fountains, clinics, hospitals, recreation parks, billiard and pool parlors, public libraries, and all public conveyances operated

on land, water, or in the air. *See* 1955 N.M. Laws, ch. 192, § 5. Although the *Regents* Court pointed to the noninclusion of universities among expressly enumerated accommodations, *see* 1981-NMSC-026, ¶ 14—nor for that matter are public secondary schools mentioned—public institutions such as libraries and parks, along with public transportation, are included. We cannot conclude that our Legislature did not conceive of including constitutionally commanded public institutions of learning, where services are offered to the public, when they created an enumerated list of public accommodations. Indeed, prior to the NMHRA, such accommodations included public institutions endorsed by state action. Although public secondary schools are not identified along with the limited other examples in the Public Accommodations Act, they are similar enough to the listed public institutions such as public libraries, parks, and transit such that we feel comfortable concluding the Legislature did intend to exclude public secondary schools such as Cibola High School when they enacted a more general statute, the NMHRA in 1969.

{17}     As well in *Regents*, our Supreme Court looked to the text of the federal 1964 Civil Rights Act, specifically to 42 U.S.C. § 2000a(b), pertaining to "[e]stablishments affecting interstate commerce or supported in their activities by [s]tate action as places of public accommodation" to find universities not enumerated among the listed accommodations. *Regents*, 1981-NMSC-026, ¶ 13. The Court observed that the statute follows the "traditional definition" of public

13

accommodations that "included places of lodging, entertainment and eating." *Id*. We note that even in the heading, 42 U.S.C. § 2000a(b) specifically includes "[e]stablishments . . . supported in their activities by [s]tate action." Pursuant to statute, discrimination is supported by State action when it "is carried on under color of any law, statute, ordinance, or regulation . . . is carried on under color of any custom or usage required or enforced by officials of the [s]tate or political subdivision thereof; or . . . is required by action of the [s]tate or political subdivision thereof." 42 U.S.C. § 2000a(d). A state-created public school enacting its constitutional mandate to educate school-age children seems squarely in this category; we can easily conceive of how a public school ordinance or a rule enforced by public school officials could constitute discrimination for purposes of 42 U.S.C. § 2000a. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 193 n.13 (1988) (observing the NCAA likely would be a state actor if "membership consisted entirely of institutions located within the same [s]tate, many of them public institutions created by the same sovereign"); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 304 (2001) ("Nor do we think there is anything to be said for the [a]ssociation's contention that there is no need to treat it as a state actor *since any public school applying the [a]ssociation*'s *rules is itself subject to suit* under [42 U.S.C.] § 1983 [(1996),] or Title IX of the Education Amendments of 1972 [20 U.S.C. §§ 1681-1688 (1986)]." (emphases added)).

**{18}** Even in historical context, public schools were seemingly contemplated by the Legislature as among the types of establishments comprising a public accommodation. If a public secondary school official in their official capacity were to refuse services to an individual based on the individual's race, religion, or sexual orientation, then the NMHRA would surely apply. As the district court held that Cibola High School, as administered by APS, was not a public accommodation, we reverse. We reiterate that this appeal, and our ruling today, pertains only to the "public accommodation" element of the statutory cause of action, Section 28-1-7(F). All remaining issues related to the viability of Plaintiff's claim under the NMHRA may be litigated on remand.

**CONCLUSION**

**{19}** For the above reasons, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

**{20}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**SHAMMARA H. HENDERSON, Judge**

_____
**GERALD E. BACA, Judge**

15